The foregoing memorandum constitutes our findings of fact and conclusions of law.

Lawrence W. CANNON d/b/a Rev. Cannon & Sons Hauling Co., Plaintiff,

v.

Richard G. ANDREWS et al., Defendants.

No. 75–452C(2)

United States District Court, E. D. Missouri, E. D.

July 28, 1976.

Samuel H. Liberman, St. Louis, Mo., for plaintiff.

Stephen H. Gilmore, St. Louis, Mo., for defendants.

MEMORANDUM

REGAN, District Judge.

Plaintiff, a black man, brought this action under Sections 1981 and 1983, 42 U.S.C., seeking actual and punitive damages and other relief from the mayor, the members of the board of aldermen, and the city engineer of the City of Ballwin, Missouri. He charges that defendants refused, on the basis of his race, to consider plaintiff's bid for a trash and refuse hauling contract and awarded the contract to whites whose bid was higher than plaintiff's.

At the times in question, there was in effect in Ballwin an ordinance providing for and regulating the collection of refuse and rubbish from dwelling premises. It provided, inter alia, that such material could be collected only by contractors, not to exceed two in number, approved by the Board of Aldermen, with whom the mayor had contracted for said purpose. The charges or fees for the service were to be set by the Board of Aldermen, assessed against the owners or occupants of the dwelling premises, and collected by the contractor. The only penalty for failing to pay the set fee was a discontinuance of the service. However, since no other contractor was permitted to perform the service, the only alternative of a dwelling owner or occupant who failed to make the required payment was to personally collect and remove his refuse.

Plaintiff is engaged in the business of trash and refuse hauling. Having learned that the then current refuse hauling contracts of the City of Ballwin were due to expire at the end of July, 1974, plaintiff contacted defendant Welch, the City Engineer, on July 5, 1974, by telephone, to inquire as to bidding procedures. He was told there were no bid forms, that Ballwin was satisfied with the refuse haulers presently doing the work, but that any bids from others would be accepted by him until 5 P.M. that day. Prior to the 5 P.M. deadline, plaintiff brought in a sealed proposal to provide curb service refuse collection at a price of $2.65 per house.

Theretofore, defendant Andrews, one of the two members of the Committee on Public Works of the Board of Aldermen, had told Welch to contact the two existing haulers and obtain their proposals for an extension of their contract. There had been no advertisement for bids and no invitation to bid except to the existing haulers. Welch obtained their proposals and later informed Andrews that he had also received a proposal from plaintiff for a lesser sum. Andrews expressed the opinion that it would be preferable to retain the existing haulers whose performance had been satisfactory rather than change to a new contractor even though the latter's bid was lower. To his knowledge, the City had had an undesirable experience several years earlier in which the low bidder had abandoned the job after being awarded the contract.

At a meeting of the Board of Aldermen, held on July 8, 1974, the proposals of the existing haulers were presented, but that of plaintiff was not. At its July 22, 1974 meeting, the Board enacted an ordinance formally authorizing the award of the contract to the existing haulers for a two year period setting the fees for the services ($3.00 for the first year), and directing the mayor to execute contracts with the aldermen-approved contractors. The mayor did so, and shortly thereafter this suit was filed.

Only Welch was aware of plaintiff's race. However, his only function was to follow the aldermanic directive to obtain proposals from the existing haulers. He also had the authority to receive (but not act on) any bids which might be tendered to him. He communicated to Andrews and to the mayor (defendant Bopp), the content of plaintiff's bid proposal. For reasons wholly unrelated to race, Andrews chose not to consider plaintiff's proposal.

The remaining aldermanic defendants were not only ignorant of plaintiff's race but also of the fact and amount of his bid. The only defendant who knew the race of plaintiff was, insofar as bidding proposals were concerned, little more than an "errand boy." Once Welch communicated to An-

drews, who was acting on behalf of the aldermanic Committee on Public Works, the proposal which had been made by plaintiff, he had no further function to perform. He deprived plaintiff of no rights.

We discern no violation of Sections 1981 or 1983, 42 U.S.C. The Board of Aldermen had the sole discretion to approve the contractors with whom alone the mayor was authorized to contract. The aldermen were concerned that the dwelling owners and occupants be provided with reliable service. The contractors they approved had performed satisfactorily for the prior period of two years. The City's unpleasant experience involving a low bidder abandoning his contract understandably made the aldermen reluctant to change, even though another contractor might submit a lower figure. What is of decisive importance, however, is the fact that none of the aldermen or the mayor had any knowledge that plaintiff was black. There was no discrimination against plaintiff on the basis of his race.

Plaintiff stresses the fact that the City does not solicit refuse hauling bids by public advertisement, contending that such "policy and practice" discriminates against blacks. Aside from the fact that plaintiff was permitted to actually submit a bid in spite of the City's "policy and practice," it is quite apparent under the evidence in this case that the race of plaintiff was not a factor in letting the refuse contracts. Defendants acted in good faith on grounds wholly unrelated to race. It follows that defendants are entitled to judgment. The foregoing memorandum constitutes our findings of fact and conclusions of law.